## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENDA S. MILLER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-4946-DDC-KGS** |
| **DILLON COMPANIES, INC., et al.,** | |
| **Defendants.** | |

### MEMORANDUM AND ORDER

Plaintiff brings this employment discrimination action against defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, asserting three claims: (1) unlawful termination; (2) failure to provide reasonable accommodations; and (3) retaliation.

This matter comes before the Court on two motions. First, defendant Dillon Companies, Inc. ("Dillons") has filed a Motion to Dismiss Counts II and III of the Complaint under Fed. R. Civ. P. 12(b)(1). Doc. 11. Dillons asserts that the Court lacks subject matter jurisdiction over these claims because plaintiff failed to exhaust her administrative remedies for Counts II (failure to accommodate) and III (retaliation).

Second, defendant The Kroger Co. ("Kroger") has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Doc. 9. Kroger asserts that it never employed plaintiff, and thus plaintiff fails to state a claim against Kroger under the ADA. Alternatively, Kroger seeks dismissal of Counts II and III for lack of subject matter jurisdiction. Like Dillons, Kroger asserts that plaintiff failed to exhaust administrative remedies for those claims.

After considering the parties' arguments, the Court grants in part and denies in part Dillons' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) (Doc. 11). The Court grants Dillons'

motion to dismiss Count II (failure to accommodate) to the extent plaintiff bases that claim on discrete acts occurring before January 2015, because plaintiff has failed to exhaust administrative remedies for such a claim.  The Court denies Dillons' motion to dismiss Count II (failure to accommodate) to the extent the claim is based on discrete acts occurring in January 2015 through March 6, 2015.  The Court also denies Dillons' motion to dismiss Count III (retaliation) because plaintiff has exhausted sufficiently her administrative remedies for that claim.

The Court also grants Kroger's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 9) without prejudice.  As explained below, the Court dismisses plaintiff's claims against Kroger because she has not alleged sufficiently that Kroger employed her.  But the Court grants plaintiff leave to amend her Complaint, assuming that she has a sufficient factual basis to present a plausible claim against Kroger under the standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If plaintiff can satisfy that standard, she must file an amended complaint within 21 days of the date of this Order.

## I.      Background

The following facts are taken from plaintiff's Complaint (Doc. 1) and viewed in the light most favorable to her.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (stating "[w]e accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]" (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)).

Plaintiff worked as a Customer Service Associate at a Dillons grocery store located at 6829 S.W. 29th Street in Topeka, Kansas ("West Dillons").  In 2003 or 2004, she began experiencing pain and numbness in her arms and wrists.  Plaintiff talked to her manager about

her pain, and he restricted her from performing checking duties.  From 2003 or 2004 until 2012, plaintiff did not perform checking duties while working at the West Dillons.

In 2012, plaintiff transferred to another Dillons grocery store located at 800 N.W. 25th Street in Topeka, Kansas ("North Dillons").  In August 2012, a doctor diagnosed plaintiff with severe osteoarthritis affecting multiple joints, including her hands and shoulders.  In early 2013, plaintiff's managers asked her to start performing checking duties again.  Plaintiff told them that she was unable to perform those duties because of a disability, and her employer requested documentation establishing the disability's existence.  On May 10, 2013, plaintiff's doctor faxed a letter to the North Dillons confirming plaintiff's diagnosis of severe osteoarthritis and recommending that plaintiff perform checking duties for no more than 10 minutes.

Plaintiff's managers required her to perform checking duties many times from May 2013 through March 2015.  They did so even though plaintiff's doctor had sent the letter confirming her diagnosis of severe osteoarthritis and even though plaintiff repeatedly asked her managers to relieve her from her checking duties because of her disability.

In January 2015, plaintiff's doctor received a fax from her employer requesting proof of plaintiff's disability and the scope of her need for an accommodation.  Plaintiff's doctor responded by providing the requested proof of disability and stating that plaintiff cannot perform repetitive hand motions for more than 15 minutes at a time.

On March 6, 2015, plaintiff was terminated from her employment.  Plaintiff alleges that she was fired because of "ill health" and "having restrictions, which according to Defendants, prevented her from performing the essentials of her job."  Doc. 1 at ¶ 30.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 11, 2015.  Doc. 1 at ¶ 8; *see also* Docs. 10-5 at 2, 12-1 at 2.[1] Plaintiff described the alleged discrimination in her charge as follows:

> I was hired by Dillons / The Kroger Store in or about 1988 to work as a Cashier. My job title later changed to Customer Service Associate and I held that position until I was discharged on or about March 6, 2015.
>
> I am a qualified individual with a disability.  In or about January 2015, I was asked to provide a medical update to support my request for reasonable accommodation.  On or about February 10, 2015, my doctor provided the medical documentation requested.  Then, on or about March 6, 2015, the employer informed me that since I can no longer perform the essential functions of the job they would have to let me go.  As a result I lost retirement that would have been available to me in just 2 more years.  The employer took this action without exploring alternative effective accommodations.
>
> I believe I was denied an effective interactive process, denied reasonable accommodation, and discharged because of my disability in violation of the Americans with Disabilities Act Amendments Act of 2008.

Docs. 10-5 at 2, 12-1 at 2.

Plaintiff's charge asserted that both the earliest and latest dates of discrimination occurred on March 6, 2015.  *Id.*  She also checked the box marked "continuing action."  *Id.*  And, plaintiff checked the box marked "disability" to identify that the discrimination was based on disability. Plaintiff did not check the box marked "retaliation."  *Id.*  The EEOC issued a Notice of Suit Rights to plaintiff on July 20, 2015, explaining that the EEOC had completed its investigation of

---

[1]     Each defendant has submitted a copy of plaintiff's Charge of Discrimination with its motion to dismiss.  Although plaintiff references her Charge of Discrimination in her Complaint, she did not attach a copy of her charge to her Complaint.  The Court still may consider this document without converting defendants' motions to dismiss to ones seeking summary judgment.

On a Rule 12(b)(1) motion, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts . . . ."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citation omitted).  And, on a Rule 12(b)(6) motion, "[c]ourts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (citation and internal quotation marks omitted).  The Court thus considers plaintiff's charge of discrimination when deciding the motions to dismiss.

her charge and advising plaintiff of her right to file a lawsuit within 90 days of her receipt of the notice.  Doc. 1 at 9.

On October 14, 2015, plaintiff filed this lawsuit against two defendants:  (1) Dillons, and (2) Kroger.  Doc. 1 at ¶¶ 2, 4.  Plaintiff alleges that both defendants employed her.  *Id.* at ¶¶ 14–15.  She asserts three claims against both defendants for violating the ADA.  First, plaintiff alleges that defendants terminated plaintiff's employment because of her disability.  *Id.* at ¶¶ 31–38.  Second, plaintiff claims that defendants failed to provide reasonable accommodations for her disability, despite her requests for accommodations from May 2013 through March 2015.  *Id.* at ¶¶ 39–45.  Third, plaintiff asserts that defendants terminated her employment in retaliation for requesting reasonable accommodations and opposing defendants' practices of discrimination from May 2013 through March 2015.  *Id.* at ¶¶ 46–50.

## II.    Legal Standard

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. § 1331; 28 U.S.C. § 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.3d at 325).  "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without converting the motion to dismiss to a motion for summary judgment.  *Id.* (citations omitted); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined with the merits of case, but concluding that exhaustion of Title VII administrative remedies is a jurisdictional issue, not an aspect of the substantive claim of discrimination, and thus does not require conversion to a summary judgment motion).

### B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the

Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the Court must assume that the complaint's factual allegations are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994)). A court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and

the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

### III.    Analysis

Both defendants move to dismiss Counts II and III because, they contend, plaintiff failed to exhaust her administrative remedies for these claims and thus no subject matter jurisdiction exists.  The Court first addresses defendants' arguments for dismissing Counts II and III under Rule 12(b)(1).  The Court then turns to Kroger's motion to dismiss under Rule 12(b)(6) for plaintiff's failure to state a claim against it.

### A.  Subject Matter Jurisdiction Under Rule 12(b)(1)

Title I of the ADA requires a putative plaintiff to exhaust the Act's administrative remedies before filing a lawsuit, just as Title VII of the Civil Rights Act of 1964 requires.  42 U.S.C. § 12117; *see also Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (citing *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).  The "first step" when determining whether plaintiff has satisfied the exhaustion requirement is to establish that plaintiff filed a charge of discrimination with the EEOC.  *Jones*, 502 F.3d at 1183 (citation omitted).  The exhaustion requirement serves the following purposes:  "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim."  *Id.* at 1185 (citation omitted).  A plaintiff must have filed his or her EEOC charge within 300 days of the "alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1); *see also Tadlock v. Marshall Cty. HMA, LLC*, 603 F. App'x 693, 700 (10th Cir. 2015).  If the EEOC does not file a civil action on the charging party's behalf, the EEOC issues a "Notice of Suit Rights" letter and the charging party has 90 days after receiving the letter to file a lawsuit.  42 U.S.C. § 2000e-5(f)(1); *see also Tadlock*, 603 F. App'x at 700.  A charging party's claims are barred if

she fails to file suit within 90 days, even if the 300–day period for filing an EEOC charge has not expired.  *Tadlock*, 603 F. App'x at 700 (citing *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1186 (10th Cir. 2006)).

The "next step" in the exhaustion process is "to determine the scope of the allegations raised in the EEOC charge."  *Jones*, 502 F.3d at 1186.  A court must decide the scope of the allegations in the EEOC charge because "'[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'"  *Id.* (quoting *MacKenzie*, 414 F.3d at 1274 (further citation omitted)).  The Tenth Circuit has emphasized that "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'"  *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002))).  To determine whether a plaintiff has exhausted administrative remedies for a particular claim, courts in our Circuit must "liberally construe charges filed with the EEOC."  *Id.* (first citing *MacKenzie*, 414 F.3d at 1274; then citing *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)).

The Tenth Circuit rule treats a failure to exhaust administrative remedies as a jurisdictional bar to filing suit in federal court.  *Jones*, 502 F.3d at 1183 (first citing *MacKenzie*, 414 F.3d at 1274; then citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)).  More recently, however, the Tenth Circuit has concluded that certain exhaustion requirements are not jurisdictional but merely constitute conditions precedent to filing a lawsuit. For example, in *Gad v. Kansas State University*, 787 F.3d 1032 (10th Cir. 2015), the Tenth

Circuit held that the requirement that a Title VII plaintiff verify an administrative charge "is non-jurisdictional and does not divest the federal courts of subject matter jurisdiction." *Id.* at 1034. When deciding the issue, the Circuit noted that "a Title VII statutory requirement's classification as jurisdictional or non-jurisdictional turns in large part on whether it is located in Title VII's jurisdictional subsection—42 U.S.C. § 2000e-5(f)(3)." *Id.* at 1038. And "neither the statutory text nor the structure of Title VII provides a 'clear statement' that jurisdiction turns on verification." *Id.* For this and other reasons, the Circuit "conclude[d] that the verification requirement is not jurisdictional." *Id.* at 1039. After reaching this conclusion, the Circuit called into question other Tenth Circuit cases holding that exhaustion requirements are jurisdictional prerequisites to suit although Title VII's jurisdictional subsection contains no reference to them. *Id.* at 1039–40 (explaining that recent Supreme Court cases have "reemphasized that [courts] should not treat requirements as jurisdictional without express congressional direction" and "[t]o the extent [the Tenth Circuit's] previous cases would require a contrary result, [the] superseding contrary decision[s] of the Supreme Court control[ ] [the] analysis.") (citations and internal quotation marks omitted)).

In another recent opinion, the Tenth Circuit left undecided whether a plaintiff's failure to attach a right-to-sue letter from the EEOC was a jurisdictional requirement or merely a condition precedent to suit. *Martin v. Mt. St. Mary's Univ. Online*, 620 F. App'x 661, 663 (10th Cir. 2015). Instead, the Circuit concluded that the district court had discretion to dismiss the suit after plaintiff failed to comply with a court order. *Id.* More recently yet, the Tenth Circuit declined to decide whether a plaintiff's failure to cooperate in good faith with the EEOC was a jurisdictional bar. *Hung Thai Pham v. James*, 630 F. App'x 735, 738 (10th Cir. 2015). But, the Circuit held that dismissal of plaintiff's claim still was appropriate under different grounds. *Id.*

It held that plaintiff's failure to cooperate with the EEOC was a condition precedent to suit. *Id.* Plaintiff had not satisfied that condition precedent, and defendant had not waived this issue as a basis for dismissal. *Id.* Thus, the Court dismissed plaintiff's claim for failing to satisfy the condition precedent of cooperating with the EEOC, but not on jurisdictional grounds. *Id.*

It is also well-established in the Tenth Circuit that the failure to exhaust a charge in a timely fashion is not jurisdictional. *See Brown v. Lowe's Home Ctrs.*, 627 F. App'x 720, 725–26 (10th Cir. 2015) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (further citations omitted)); *see also Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014) (explaining that "the untimeliness of an administrative claim, although an exhaustion issue . . . is not jurisdictional" (citations omitted)), *cert. granted*, 135 S. Ct. 1892 (2015).

But, despite these recent case law developments, existing Tenth Circuit precedent still holds that a plaintiff's failure to allege a discrete incident of discrimination or retaliation within the scope of the administrative charge serves as a jurisdictional bar to suit. *See Green*, 760 F.3d at 1140 (stating "[i]n this circuit the failure to [assert a discrete incident of an unlawful employment practice in an exhausted administrative charge] deprives the court of jurisdiction");[2] *see also Jones*, 502 F.3d at 1183; *MacKenzie*, 414 F.3d at 1274. The Court thus follows this precedent and considers whether plaintiff's claims in this lawsuit fall within the scope of her administrative charge of discrimination and thus confer subject matter jurisdiction on the Court.[3]

---

[2]     Our court has recognized that "[w]hile *Green* is now before the Supreme Court, it still remains the law of this circuit." *Williams v. Nex-Tech Wireless, L.L.C.*, No. 15-4888-SAC, 2016 WL 1660547, at *2 (D. Kan. Apr. 27, 2016).

[3]     Even if exhaustion is not a jurisdictional bar and instead merely a condition precedent, plaintiff still cannot proceed with her unexhausted claims. *See Hung Thai Pham v. James*, 630 F. App'x 735, 738 (10th Cir. 2015) (explaining that "even if exhaustion is not jurisdictional, this Title VII requirement is valid" and requires dismissal if defendant properly presents the matter for decision without waiving or forfeiting the issue); *see also Arabalo v. City of Denver*, 625 F. App'x 851, 864 (10th Cir. 2015) (explaining that plaintiff "would still lose even if administrative exhaustion was not a jurisdictional

### 1.   Count II (Failure to Accommodate)

Plaintiff asserts a failure to accommodate claim against defendants in Count II of her Complaint.  She alleges that from May 2013 through March 2015, defendants failed to provide her with reasonable accommodations for a disability even though she requested them. Defendants argue that plaintiff's charge of discrimination fails to exhaust a failure to accommodate claim beginning in May 2013.  Indeed, plaintiff's charge identifies the earliest and latest dates of discrimination as March 6, 2015.  But she also checked the box marked "continuing action."  In the text of her charge, plaintiff asserts that defendants denied her reasonable accommodation, but the earliest date that she references is January 2015, when her employer asked her to provide a medical update.

Defendants contend that any discrete acts occurring more than 300 days before plaintiff filed her charge of discrimination are time-barred.  The Court agrees.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . constitute[ ] separate actionable 'unlawful employment practice[s].'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  A plaintiff must exhaust administrative remedies for each discrete act by filing a charge within 300 days of each discrete act's occurrence.  *Id.*  Otherwise, a plaintiff's claims are barred.  *Id.*

The Tenth Circuit has not addressed whether a failure to accommodate is a discrete act of discrimination that a plaintiff must exhaust in a charge of discrimination.  *See Becerra v. EarthLink, Inc.*, 421 F. Supp. 2d 1335, 1343 (D. Kan. 2006).  But, following the holdings of two

---

requirement but instead was a mere condition precedent" because "she still failed to exhaust her administrative remedies" (citing *Gad*, 787 F.3d at 1042)).  Here, defendants have not waived or forfeited the exhaustion defense.  Thus, even if plaintiff's failure to exhaust is not a jurisdictional bar to suit, plaintiff's unexhausted claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) because she failed to satisfy a condition precedent.

published Circuit opinions, our court has predicted that the Tenth Circuit, if confronted with this question, "would conclude that an employer's rejection of an employee's proposed accommodation is a discrete act that must be the subject of a charge of discrimination within 300 days of the employer's rejection." *Id.* (first citing *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003); then citing *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003)).  The Court is persuaded by Judge Lungstrum's analysis and applies his conclusion in *Becerra* here.

Plaintiff thus cannot assert a failure to accommodate claim based on discrete acts of alleged discrimination that occurred more than 300 days before she filed her charge of discrimination on May 11, 2015.  Thus, her Complaint's allegations about defendants' failure to accommodate beginning in May 2013 are time-barred to the extent the failure occurred more than 300 days before May 11, 2015.  *See id.* at 1344 (holding that the court lacked subject matter jurisdiction over accommodation claims that plaintiff failed to exhaust within the limitations period (citing *Morgan*, 536 U.S. at 113 ("'Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.'"))).

The Court also dismisses plaintiff's failure to accommodate claims occurring before January 2015.  Even giving plaintiff's charge the most liberal construction,[4] the Court cannot conclude that she exhausted a claim for an alleged failure to accommodate a disability occurring before January 2015.  While plaintiff accused defendants of denying her reasonable accommodations in her charge, she identified no acts occurring before January 2015 to support her failure to accommodate claim.  Thus, investigation into defendants' alleged failure to

---

[4]     *See Jones*, 502 F.3d at 1186 (explaining that the Tenth Circuit "liberally construe[s] charges filed with the EEOC" when determining if a plaintiff has exhausted administrative remedies for a particular claim).

accommodate plaintiff before January 2015 cannot "'reasonably be expected to follow the charge of discrimination submitted to the EEOC.'"  *Jones*, 502 F.3d at 1186 (quoting *MacKenzie*, 414 F.3d at 1274).

Plaintiff argues that the scope of the EEOC's investigation included the failure to accommodate claims that she asserts in her Complaint in this lawsuit.  To support this argument, she relies on a pre-determination interview letter completed by the EEOC investigator.  Doc. 18-1.  Plaintiff asserts that this letter is part of the EEOC file, which plaintiff has incorporated into the Complaint by reference, and thus the Court may consider it when deciding defendants' motions to dismiss.  Defendants disagree.  Defendants note that plaintiff's Complaint refers only to her EEOC charge, not the entire EEOC file, and thus the Court cannot consider the letter.  Defendants also assert that plaintiff provides no evidentiary foundation to allow the Court to consider the pre-determination interview letter.

The Court need not decide this issue, however, because even if properly considered, the pre-determination interview letter provides no support for plaintiff's argument that she exhausted a failure to accommodate claim based on acts occurring before January 2015.  The investigator's letter states that he has investigated plaintiff's allegations that her employer denied her reasonable accommodation.  But it never references the dates of the alleged failure to accommodate.  Indeed, the letter asserts that the investigator based his investigation on plaintiff's allegations.  Those allegations, as described in plaintiff's charge of discrimination, asserted that the earliest date of alleged discrimination occurred in January 2015.  The Court thus concludes that plaintiff has not exhausted a failure to accommodate claim based on any acts occurring before January 2015.  In contrast, plaintiff may proceed with her failure to accommodate claim

(as asserted in Count II) based on acts occurring in January 2015 through March 6, 2015, because she properly exhausted those allegations in her EEOC charge.

### 2. Count III (Retaliation)

Defendants also seek dismissal of plaintiff's retaliation claim in Count III because, they contend, this claim falls outside the scope of the unlawful employment practices alleged in plaintiff's EEOC charge.  Initially, plaintiff's failure to mark the "retaliation" box on her EEOC charge "creates a presumption that the charging party is not asserting claims represented by that box."  *Jones*, 502 F.3d at 1186 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)).  Plaintiff may rebut this presumption, however, "if the text of the charge clearly sets forth the basis of the claim."  *Id.* (citing *Gunnell*, 152 F.3d at 1260).

In *Jones*, the plaintiff checked boxes on a questionnaire asserting that the employer's discrimination was based on race, color, and age, but he did not check the box marked disability or retaliation.  *Id.* at 1186–87.  But *Jones*' plaintiff had checked the disability and retaliation boxes on another page of the questionnaire, and his responses to certain questions on the questionnaire referenced a workplace injury and accused his employer of acting with a retaliatory motive when it refused to allow him to return to work.  *Id.*  The Tenth Circuit concluded that plaintiff's answers on the questionnaire should have led the EEOC to investigate both a disability and retaliation claim, and thus plaintiff's disability and retaliation claims fell within the scope of the EEOC charge.  *Id.*

Here, plaintiff concedes that she neither marked the "retaliation" box on her charge nor used the word "retaliation" in her factual allegations.  Plaintiff argues, however, that the factual allegations in her charge alleged a retaliation claim sufficiently to comply with the exhaustion requirement.  Plaintiff's EEOC charge alleged:  (1) she is disabled; (2) defendants asked her to

provide a medical update in January 2015 to support her request for reasonable accommodation; (3) her doctor provided the requested medical documentation on February 10, 2015; and (4) defendants terminated her employment on March 6, 2015.  Doc. 12-1 at 2.  Plaintiff also asserted in her charge that defendants denied her an effective interactive process, denied her reasonable accommodation, and discharged her because of a disability.  *Id.*

The Court agrees with plaintiff.  These allegations in her charge sufficiently asserted a retaliation claim to discharge her duty to exhaust her remedies for such a claim.  The Tenth Circuit "treat[s] requests for reasonable accommodation as protected activity [sufficient to support a retaliation claim] under the ADA."  *Jones*, 502 F.3d at 1194 (citing *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 752 (10th Cir. 1999)).  Thus, liberally construing plaintiff's charge,[5] it alleges that she engaged in protected activity by requesting reasonable accommodation.  It also alleges that defendants denied plaintiff the requested accommodation and terminated her employment on March 6, 2015.  Given these allegations, it is reasonable to expect the EEOC to have investigated whether her employer had terminated her as retaliation for her accommodation request.  *See Jones*, 502 F.3d at 1187 (holding that plaintiff's discrimination and retaliation claims "'can reasonably be expected to follow the charge of discrimination" (quoting *MacKenzie*, 414 F.3d at 1274)); *see also Patterson v. Goodyear Tire and Rubber Co.*, No. 08-2060-EFM, 2011 WL 1484153, at *9 (D. Kan. Apr. 19, 2011) (construing plaintiff's charge liberally and concluding that it "may encompass a claim for retaliation" when plaintiff "stated that he had a disability, sought reasonable accommodations from January 2004 to February 2007, was not afforded reasonable accommodations during those dates, and was terminated on February 13, 2007 due to his disability").

---

[5]        *See Jones*, 502 F.3d at 1186.

In sum, the text of plaintiff's EEOC charge provided sufficient information to rebut the presumption that her charge contains no retaliation claim even though she did not mark the "retaliation" box.  The Court denies defendants' motions to dismiss Count III under Fed. R. Civ. P. 12(b)(1).

### B.  Failure to State a Claim Under Rule 12(b)(6)

Defendant Kroger also moves to dismiss because, it contends, it never employed plaintiff and thus it has no liability under the ADA.  Instead, Kroger asserts that Dillons employed plaintiff.  Kroger explains that it is Dillons' parent company, but it asserts that Kroger and Dillons are separate and distinct legal entities.  Thus, Kroger contends, it had no employment relationship with plaintiff.

To state a claim under the ADA, a plaintiff must allege that the defendant was her employer.  *See Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1217 (10th Cir. 2002) (explaining that the ADA applies to "employers" as the statute defines that term (quoting 42 U.S.C. § 12111)).[6]  The Tenth Circuit uses three different tests when determining whether a defendant is an employer under the ADA:  (1) the hybrid test; (2) the joint employer test; and (3) the single employer test.  *Id.* at 1217–1218; *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225–26 (10th Cir. 2014).

First, the "hybrid" test "combines two types of analysis:  (1) a common law inquiry asking whether an entity controls its workers in an employer-employee relationship, and (2) the 'economic realities test,' which asks whether the worker is in business for himself 'as a matter of

---

[6]       *Bristol* also noted that the ADA defines "employers" in the same way that Title VII defines that term.  312 F.3d at 1217 (first citing 42 U.S.C. § 12111; then citing *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999)).  Because of the similarities in both statutes' definitions, the Tenth Circuit frequently applies Title VII cases to similar terms and principles in ADA cases, and vice versa.  *See Bristol*, 312 F.3d at 1217–18; *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 n.8 (10th Cir. 2014).  The Court does so here.

economic fact.'" *Knitter*, 758 F.3d at 1226 (quoting *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992)).  The Tenth Circuit originally used the hybrid test only to differentiate between employees and independent contractors, but later began using the test to determine if an entity employed a defendant for purposes of Title VII. *Id.* (citation omitted). But, in *Bristol*, the Tenth Circuit "clarified that the joint employer test, not the hybrid test, is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer." *Id.* (citing *Bristol*, 312 F.3d at 1218).

Second, under the "joint employer" test, "a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers." *Bristol*, 312 F.3d at 1218.  This test "acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." *Id.* (citations omitted).  To hold both entities liable as joint employers, they both must exercise significant control over the terms and conditions of a worker's employment.  *Knitter*, 758 F.3d at 1226 (first citing *Bristol*, 312 F.3d at 1218; then citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1330 (10th Cir. 2002)).

The most important aspect of control over the terms and conditions of employment "'is the right to terminate it under certain circumstances . . . .'" *Id.* (quoting *Bristol*, 312 F.3d at 1219).  "Additional factors courts consider for determining control under the joint employer test include the ability to 'promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; . . . day-to-day supervision of employees, including employee discipline; and . . . control of employee records, including payroll, insurance, taxes and the like.'" *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)).

Finally, under the "single employer" test, "a plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer." *Bristol*, 312 F.3d at 1218. The Tenth Circuit has explained that the "joint employer" and "single employer" tests are sometimes confused with one another, but "'they differ in that the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities.'" *Knitter*, 758 F.3d at 1226–27 (quoting *Bristol*, 312 F.3d at 1218). When applying the "single employer" test, courts "generally weigh four factors: '(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.'" *Knitter*, 758 F.3d at 1227 (quoting *Bristol*, 312 F.3d at 1220 (further quotation omitted)).

In this case, plaintiff's Complaint asserts no facts to suggest that Kroger and Dillons are a "hybrid employer," "single employer," or "joint employer," as the Tenth Circuit defines those terms. Likewise, plaintiff asserts no facts demonstrating a plausible basis for concluding that the "hybrid" test applies here. *See Bristol*, 312 F.3d at 1218 (clarifying that a court should use the joint employer test, not the hybrid test, when an employee of one entity seeks to hold another entity liable as an employer). Plaintiff also alleges no facts demonstrating a basis to conclude that Kroger controlled the terms and conditions of plaintiff's employment so as to render Kroger liable under the "joint employer" test. She also asserts no facts showing that Kroger and Dillons are an integrated enterprise to hold Kroger liable under the "single employer" test.

Plaintiff simply alleges that both defendants employed her. *See* Doc. 1 at ¶¶ 14, 15. Plaintiff also describes Kroger as "d/b/a Dillons" in her Complaint. *See* Doc. 1 at ¶¶ 4, 5. But she alleges no facts showing a plausible basis to find that Kroger does business as Dillons.

Plaintiff's conclusory allegations that Kroger employed her are insufficient to state a claim against Kroger under the ADA. They provide no facts establishing employer liability under the Tenth Circuit tests described in *Knitter* and *Bristol*, and thus plaintiff has failed to state a plausible claim against Kroger. *See Johnson v. Hix Corp.*, No. 15-CV-07843-JAR, 2015 WL 7017374 at *2 (D. Kan. Nov. 10, 2015) (holding that plaintiff failed to state a plausible Title VII claim against defendant because she "merely recites the elements required to establish employer liability under Title VII, without providing any allegations as to how Defendant controlled Plaintiff's work conditions, who [a temporary employment agency] is, or what the relationship was between [the temporary employment agency] and Defendant"); *see also Mitchem v. Edmond Transit Mgmt., Inc.*, No. CIV-10-1203-D, 2012 WL 2370669, at *4–5 (W.D. Okla. June 22, 2012) (dismissing plaintiff's Title VII and ADA claims against one defendant because plaintiff's complaint alleged insufficient facts to establish employer liability against the defendant); *Konah v. Dist. of Columbia*, 815 F. Supp. 2d 61, 70–71 (D.D.C. 2011) (dismissing plaintiff's Title VII claim under Fed. R. Civ. P. 12(b)(6) because plaintiff failed to state sufficient facts to demonstrate that the defendant employed her). *Cf. Banks v. St. Francis Health Ctr., Inc.*, No. 15-CV-2602-JAR, 2016 WL 1298056, at *4 (D. Kan. Mar. 31, 2016) (denying a motion to dismiss plaintiff's Title VII and § 1981 claims because she "plausibly stated a claim that [the two defendants] were joint employers based on the [ ] factors laid out in *Knitter*").

Plaintiff asks for leave to amend her Complaint, if the Court concludes that she has failed to state a claim against Kroger, so that she can assert additional facts to support her claims against this defendant. The Court grants plaintiff leave to file an amended complaint to remedy the deficiencies with her claims against Kroger, as identified in this Order. But, as the Court explained in the introduction, plaintiff's amended complaint must allege a sufficient factual basis

to state a plausible claim against Kroger under the standards announced in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Dillon

Companies Inc.'s ("Dillons") Rule 12(b)(1) Motion to Dismiss Counts II and III of the

Complaint (Doc. 11) is granted in part and denied in part.  The Court grants Dillons' motion to

dismiss Count II (failure to accommodate) to the extent plaintiff bases that claim on discrete acts

occurring before January 2015, because plaintiff has failed to exhaust administrative remedies

for such a claim.  The Court denies Dillons' motion to dismiss Count II (failure to accommodate)

to the extent the claim is based on discrete acts occurring in January 2015 through March 6,

2015.  The Court denies Dillons' motion to dismiss Count III (retaliation) because plaintiff has

exhausted sufficiently her administrative remedies for that claim.

**IT IS FURTHER ORDERED THAT** defendant The Kroger Co.'s ("Kroger") Motion

to Dismiss Complaint (Doc. 9) is granted under Fed. R. Civ. P. 12(b)(6) without prejudice.

Plaintiff is granted leave to amend her Complaint within 21 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 18th day of May, 2016, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**